UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

JUSTIN WATTS,

           Plaintiff,

                         Case No. 1:25-cv-923

v.

                         Honorable Maarten Vermaat

UNKNOWN TENHOVE et al.,

           Defendants.
_____/

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. The Court will grant Plaintiff leave to proceed *in forma pauperis*. Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States Magistrate Judge. (Compl., ECF No. 1, PageID.5.)

This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court is required to conduct this initial review prior to the service of the complaint. *See In re Prison Litig. Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997). Service of the complaint on the named defendants is of particular significance in defining a putative defendant's relationship to the proceedings.

"An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under

longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) ("Pursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal.").

Here, Plaintiff has consented to a United States Magistrate Judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ." 28 U.S.C. § 636(c). Because the named Defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a

consent from the defendants[; h]owever, because they had not been served, they were not parties to this action at the time the magistrate entered judgment.").[1]

Under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992).

Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

## Discussion

### I.    Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Marquette Branch Prison (MBP) in Marquette, Marquette County, Michigan. The events about which he complains, however, occurred at the Earnest C. Brooks Correctional Facility (LRF) in Muskegon Heights, Muskegon County, Michigan. Plaintiff sues the following LRF personnel in their official and personal capacities: Corrections Officer **Unknown Tenhove**, Sergeant

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States Magistrate Judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

**Unknown Goulet**, Grievance Coordinator **Unknown Page**, and Hearing Officer **Unknown Party**. (Compl., ECF No. 1, PageID.2.)

Plaintiff alleges that on August 28, 2024, around 9:00 a.m., he was escorted to the segregation unit at LRF. (*Id.*, PageID.3.) Plaintiff was strip-searched by non-party Officer Ferguson and then was placed in segregation cell #12. (*Id.*)

Later that day, Defendant Goulet came to Plaintiff's cell door to review Plaintiff on a Class I misconduct, written by Defendant Tenhove, charging Plaintiff with possession of a weapon. (*Id.*) According to Plaintiff, Defendant Tenhove wrote that he had strip-searched Plaintiff and found a "5[-inch] piece of sharpened metal inside of [Plaintiff's] underwear." (*Id.*) Plaintiff claims that this statement was false because Defendant Tenhove never strip-searched him and never found a weapon on his person. (*Id.*) Plaintiff claims that Defendant Tenhove "intentionally and maliciously falsified [the] misconduct on [Plaintiff] in [an] attempt to get [Plaintiff] a new case." (*Id.*)

During the review process, Plaintiff told Defendant Goulet that Defendant Tenhove had falsified the misconduct. (*Id.*, PageID.3–4.) Plaintiff asked Defendant Goulet to review camera footage, and Defendant Goulet responded, "Not happening." (*Id.*, PageID.4.) Plaintiff continued to request that Defendant Goulet review the footage "so he could throw the misconduct out and release [Plaintiff] from segregation." (*Id.*) Defendant Goulet responded, "You're not going anywhere. If he says you had a weapon then you had a weapon because I'm not going against my staff." (*Id.*) Plaintiff faults Defendant Goulet for not "uphold[ing] his responsibilities and duties" by failing to investigate the legitimacy of the misconduct. (*Id.*)

In mid-September of 2024, Plaintiff was contacted by the Michigan State Police regarding this misconduct. (*Id.*, PageID.3.) During that same time frame, Defendant Tenhove was "called down to the prosecutor's office[,] where he was interviewed and questioned about this situation."

(*Id.*) Plaintiff alleges that during that interview, Defendant Tenhove admitted that he never strip-searched Plaintiff or found a weapon. (*Id.*) Because of that admission, the prosecutor's office "decided to not criminally charge [Plaintiff] with a felony prisoner possession of a weapon." (*Id.*) Plaintiff fails to allege facts that support an inference that he might have personal knowledge regarding the events which occurred outside of the prison walls.

On September 3, 2024, Plaintiff submitted a Step I grievance, but Defendant Page rejected it, claiming that Plaintiff "was grieving the outcome of a misconduct or the hearing process." (*Id.*) Plaintiff avers that was not true and that he was grieving Defendant Tenhove for falsifying the misconduct. (*Id.*) Plaintiff claims that Defendant Page "intentionally rejected [the] grievance to hide and cover up [Defendant] Tenhove's actions, and also obstruct [Plaintiff] from pursuing further litigation." (*Id.*)

On September 9, 2024, Plaintiff was called to the school building for a hearing on the Class I misconduct. (*Id.*, PageID.4.) Defendant Unknown Party watched the video provided by non-party Hearings Investigator Mr. Atkins, and admitted that Defendant Ferguson had been the officer who strip-searched Plaintiff. (*Id.*) Plaintiff claims that he was still found guilty even though Defendant Unknown Party admitted that Defendant Tenhove had not been present for the shakedown. (*Id.*) Plaintiff faults Defendant Unknown Party for failing to uphold his duties and responsibilities and finding Plaintiff guilty "on a falsified misconduct." (*Id.*) Defendant Unknown Party sanctioned Plaintiff with 30 days' loss of privileges "on top of the [seven] days [Plaintiff] was held in segregation." (*Id.*) Plaintiff claims that during this time, he was "not able to contact [his] family, go to recreation[,] or anything else." (*Id.*)

Based upon the foregoing, Plaintiff sets forth Fifth, Eighth, and Fourteenth Amendment claims (*Id.*, PageID.3–4.) The Court also construes Plaintiff's complaint to assert First Amendment

claims against Defendant Page regarding the rejection of Plaintiff's grievance. As relief, Plaintiff seeks damages, as well as dismissal of the misconduct. (*Id.*, PageID.5.)

## II.    Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating

6

federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A.     Fifth Amendment Claims

Plaintiff states in a conclusory fashion that Defendants' actions or inactions violated his Fifth Amendment rights. (Compl., ECF No. 1, PageID.4.) While Plaintiff does not indicate to which provision of the Fifth Amendment he refers, Plaintiff presumably invokes the Fifth Amendment's Due Process Clause. The Fifth Amendment applies only to claims against federal employees. In this action, Plaintiff sues state actors. Plaintiff, therefore, cannot maintain his Fifth Amendment claims, and those claims will be dismissed. *See, e.g.*, *Scott v. Clay Cnty., Tenn.*, 205 F.3d 867, 873 n.8 (6th Cir. 2000) (noting that "[t]he Fourteenth Amendment's Due Process Clause restricts the activities of the states and their instrumentalities; whereas the Fifth Amendment's Due Process Clause circumscribes only the actions of the federal government").

### B.     Eighth Amendment Claims

Plaintiff contends that his Eighth Amendment rights were violated when he was confined to segregation for seven days and when he was given 30 days' loss of privileges, during which he was not able to contact his family, go to recreation, or do anything else. (Compl., ECF No. 1, PageID.4.)

With its prohibition against cruel and unusual punishment, the Eighth Amendment protects against the denial of the "minimal civilized measure of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981); *see also Wilson v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998). However, the Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure

7

while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987). "[R]outine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). Consequently, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.*

In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479–80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (applying deliberate indifference standard to medical claims)); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims)). The deliberate-indifference standard includes both objective and subjective components. *Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 35–37. To satisfy the objective prong, an inmate must show "that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Under the subjective prong, an official must "know[ ] of and disregard[ ] an excessive risk to inmate health or safety." *Id.* at 837. "[I]t is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Id.* at 842. "It is, indeed, fair to say that acting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk." *Id.* at 836. "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* at 844.

Here, Plaintiff's Eighth Amendment claims fail because he does not allege any facts suggesting that Defendants' actions denied him any basic human needs. First, as set forth *supra*,

Plaintiff remained in segregation for seven days during the pendency of the Class I misconduct against him. However, "[b]ecause placement in segregation is a routine discomfort that is a part of the penalty that criminal offenders pay for their offenses against society, it is insufficient to support an Eighth Amendment claim." *Harden-Bey v. Rutter*, 524 F.3d 789, 795 (6th Cir. 2008) (internal quotation marks omitted) (quoting *Murray v. Unknown Evert*, 84 F. App'x. 553, 556 (6th Cir. 2003). Thus, Plaintiff cannot maintain an Eighth Amendment claim premised upon his seven-day stay in segregation.

Plaintiff also indicates that he was sanctioned to 30 days' loss of privileges after being found guilty of the Class I misconduct. The Sixth Circuit has held that without a showing that basic human needs were not met, the denial of privileges cannot establish an Eighth Amendment violation. *See Evans v. Vinson*, 427 F. App'x 437, 443 (6th Cir. 2011); *Harden-Bey*, 524 F.3d at 795. In light of *Harden-Bey*, given that placement in segregation does not amount to an Eighth Amendment violation, logic dictates that the lesser sanction of loss of privileges would likewise be insufficient to support an Eighth Amendment claim. *See Alexander v. Vittitow*, No. 17-1075, 2017 WL 7050641, at *5 (6th Cir. Nov. 9, 2017) (noting that "[t]emporary loss of privileges and confinement in segregation—without any allegations that basic human needs were not met—cannot establish an Eighth Amendment claim").

In sum, Plaintiff's allegations regarding the loss of privileges sanctions, as well as his seven-day stay in segregation, are insufficient to state an Eighth Amendment claim upon which relief may be granted. Accordingly, the Court will dismiss Plaintiff's Eighth Amendment claims.

## C.    Claims Against Defendant Page

Plaintiff faults Defendant Page for violating his Fourteenth Amendment due process rights by "intentionally and wrongfully rejecting [Plaintiff's] grievance." (Compl., ECF No. 1, PageID.3.)

Plaintiff has no due process right to file a prison grievance. The courts have held that there exists no constitutionally protected due process right to an effective prison grievance procedure. *See Hewitt v. Helms*, 459 U.S. 460, 467 (1983); *Walker v. Mich. Dep't of Corr.,* 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003); *Young v. Gundy,* 30 F. App'x 568, 569–70 (6th Cir. 2002); *Carpenter v. Wilkinson,* No. 99-3562, 2000 WL 190054, at *2 (6th Cir. Feb. 7, 2000); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (collecting cases). Michigan law does not create a liberty interest in the grievance procedure. *See Olim v. Wakinekona,* 461 U.S. 238, 249 (1983); *Keenan v. Marker*, 23 F. App'x 405, 407 (6th Cir. 2001); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994). Because Plaintiff has no liberty interest in the grievance process, the alleged conduct by Defendant Page could not have deprived Plaintiff of due process.

Additionally, Plaintiff's right to petition government is not violated by any failure to process or act on his grievance. The First Amendment "right to petition the government does not guarantee a response to the petition or the right to compel government officials to act on or adopt a citizen's views." *Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir. 1999); *see also Minn. State Bd. for Cmty. Colls. v. Knight*, 465 U.S. 271, 285 (1984) (holding the right to petition protects only the right to address government; the government may refuse to listen or respond).

Moreover, any actions by Defendant Page related to Plaintiff's grievance have not barred Plaintiff from seeking a remedy for his grievance. *See Cruz v. Beto*, 405 U.S. 319, 321 (1972). "A prisoner's constitutional right to assert grievances typically is not violated when prison officials prohibit only 'one of several ways in which inmates may voice their complaints to, and seek relief, from prison officials' while leaving a formal grievance procedure intact." *Griffin v. Berghuis*, 563 F. App'x 411, 415–16 (6th Cir. 2014) (citing *Jones v. N.C. Prisoners' Labor Union, Inc.*, 433 U.S.

119, 130 n.6 (1977)). Indeed, Plaintiff's ability to seek redress is underscored by his *pro se* invocation of the judicial process. *See Azeez v. DeRobertis*, 568 F. Supp. 8, 10 (N.D. Ill. 1982). Even if Plaintiff had been improperly prevented from filing a grievance, his right of access to the courts to petition for redress of his grievances (i.e., by filing a lawsuit) cannot be compromised by his inability to file institutional grievances, and he therefore cannot demonstrate the actual injury required for an access-to-the-courts claim. *See, e.g.*, *Lewis v. Casey*, 518 U.S. 343, 355 (1996) (requiring actual injury); *Bounds v. Smith*, 430 U.S. 817, 821–24 (1977), *overruled in other part by Lewis v. Casey*, 518 U.S. 343 (1996). The exhaustion requirement only mandates exhaustion of *available* administrative remedies. *See* 42 U.S.C. § 1997e(a). If Plaintiff were improperly denied access to the grievance process, the process would be rendered unavailable, and exhaustion would not be a prerequisite for initiation of a civil rights action. *See Ross v. Blake*, 578 U.S. 632, 640–44 (2016) (reiterating that, if the prisoner is barred from pursuing a remedy by policy or by the interference of officials, the grievance process is not available, and exhaustion is not required); *Kennedy v. Tallio,* 20 F. App'x 469, 470–71 (6th Cir. 2001).

Accordingly, for each of the foregoing reasons, the Court will dismiss Plaintiff's claims against Defendant Page.

### D.    Fourteenth Amendment Claims Against Defendants Tenhove, Goulet, and Unknown Party

Plaintiff contends that Defendants Tenhove, Goulet, and Unknown Party violated his Fourteenth Amendment due process rights from issuance of the allegedly false misconduct by Defendant Tenhove, to the review process by Defendant Goulet, through the misconduct hearing conducted by Defendant Unknown Party. The Court construes Plaintiff's complaint to assert both procedural and substantive due process claims.

### 1.    Procedural Due Process Claims

To prevail on a procedural due process claim, an inmate must first demonstrate that he was deprived of "life, liberty, or property" by government action. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). The Supreme Court long has held that the Due Process Clause does not protect every change in the conditions of confinement having an impact on a prisoner. *See Meachum v. Fano*, 427 U.S. 215, 225 (1976). A prisoner's ability to challenge a prison misconduct conviction therefore depends on whether the conviction implicated any liberty interest. A prisoner does not have a protected liberty interest in prison disciplinary proceedings unless the sanction "will inevitably affect the duration of his sentence" or the resulting restraint imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *See Sandin v. Conner*, 515 U.S. 472, 484, 487 (1995).

Although Plaintiff avers that he was found guilty of the Class I misconduct for possession of a weapon, the allegations of Plaintiff's complaint reveal that Plaintiff's misconduct charge did not fall into either of the categories identified in *Sandin* as sanctions that cannot be imposed without due process, that is, those having an inevitable effect on the duration of Plaintiff's sentence or imposing an atypical and significant hardship. As to the first category, Plaintiff has not alleged a deprivation that will inevitably affect the duration of his sentence. A prisoner like Plaintiff, who is serving an indeterminate sentence for an offense committed after 2000, can accumulate "disciplinary time" for a major misconduct conviction. *See* Mich. Comp. Laws § 800.34. Disciplinary time is considered by the Michigan Parole Board when it determines whether to grant parole. *Id.* § 800.34(2). It does not necessarily affect the length of a prisoner's sentence because it is "simply a record that will be presented to the parole board to aid in its [parole] determination." *Taylor v. Lantange*, 418 F. App'x 408, 412 (6th Cir. 2011).

12

Here, Plaintiff avers that he had to stay in segregation for seven days while the Class I misconduct was pending against him. MDOC Policy Directive 04.05.120 identifies three types of segregation used by the MDOC: temporary segregation, administrative segregation, and punitive segregation. *See* MDOC Policy Directive 04.05.120, ¶¶ M–Z (eff. June 1, 2019). Temporary segregation "is used when it is necessary to move a prisoner from general population (e.g., pending a hearing for a Class I misconduct violation, classification to administrative segregation, pending an investigation, transfer, etc.)." *See id.* ¶ M. Punitive segregation, on the other hand, is used "only [for an inmate] to serve a detention sanction for a Class I misconduct as ordered by an ALJ." *Id.* ¶ Z.

In *Sandin*, the Supreme Court concluded that disciplinary segregation for 30 days did not impose an atypical and significant hardship. *See Sandin*, 515 U.S. at 484. A stay in segregation is considered atypical and significant only in "extreme circumstances." *Joseph v. Curtin*, 410 F. App'x 865, 868 (6th Cir. 2010). Generally, courts will consider the nature and duration of a stay in segregation to determine whether it imposes an "atypical and significant hardship." *Harden-Bey*, 524 F.3d at 794. The United States Court of Appeals for the Sixth Circuit has concluded that a stay longer than 30 days in segregation is not necessarily considered an atypical or significant hardship, *see Joseph*, 410 F. App'x at 868; *see also, e.g., Jones v. Baker*, 155 F.3d 810, 812–23 (6th Cir. 1998) (two years of segregation while the inmate was investigated for the murder of a prison guard in a riot); *Mackey v. Dyke*, 111 F.3d 460 (6th Cir. 1997) (one year of segregation following convictions for possession of illegal contraband and assault, including a 117-day delay in reclassification due to prison crowding). Generally, only periods of segregation lasting for several years or more have been found to be atypical and significant. *See, e.g., Selby v. Caruso*, 734 F.3d 554, 559 (6th Cir. 2013) (13 years of segregation implicates a liberty interest); *Harris v.*

*Caruso*, 465 F. App'x 481, 484 (6th Cir. 2012) (eight years of segregation implicates a liberty interest); *Harden-Bey*, 524 F.3d at 795 (remanding to the district court to consider whether the plaintiff's allegedly "indefinite" period of segregation, i.e., three years without an explanation from prison officials, implicates a liberty interest).

In light of the foregoing, considering that placement in disciplinary and administrative segregation for relatively short periods of time do not qualify as atypical or significant, certainly Plaintiff's seven days in temporary segregation cannot rise to the level of atypical or significant as contemplated by *Sandin*. *See McGowan v. Morse*, No. 1:17-cv-184, 2017 WL 1017823, at *7 (W.D. Mich. Mar. 16, 2017) (concluding same regarding five-day stay in temporary segregation). Likewise, where a stay longer than 30 days in disciplinary or administrative segregation is not considered an atypical or significant hardship, it would be illogical to suggest that the lesser penalty of loss of privileges for that duration could be atypical or significant. Sixth Circuit authority bears that out. *See Ingram v. Jewell*, 94 F. App'x 271, 273 (6th Cir. 2004) (holding that a 14-days' loss of privileges sanction did not implicate the due process clause); *Carter v. Tucker*, 69 F. App'x 678, 680 (6th Cir. 2003) (nine-month loss of package privileges did not impose an atypical and significant hardship); *Alexander*, 2017 WL 7050641, at *3 (concluding that "thirty days' loss of privileges . . . did not implicate a protected liberty interest"); *Langford v. Koskela*, No. 16-1435, 2017 WL 6803554, at *3 (6th Cir. Jan. 24, 2017) (holding that 30 days' toplock and 30 days' loss of privileges "does not amount to an 'atypical and significant hardship'").

Accordingly, for the foregoing reasons, Plaintiff's Fourteenth Amendment procedural due process claims related to his misconduct proceedings are properly dismissed for failure to state a claim.

### 2.    Substantive Due Process

The Court has also construed Plaintiff's complaint to assert Fourteenth Amendment substantive due process claims against Defendants Tenhove, Goulet, and Unknown Party.

"Substantive due process 'prevents the government from engaging in conduct that shocks the conscience or interferes with rights implicit in the concept of ordered liberty.'" *Prater v. City of Burnside*, 289 F.3d 417, 431 (6th Cir. 2002) (quoting *United States v. Salerno*, 481 U.S. 739, 746 (1987)). "Substantive due process . . . serves the goal of preventing governmental power from being used for purposes of oppression, regardless of the fairness of the procedures used." *Pittman v. Cuyahoga Cnty. Dep't of Child. & Fam. Servs.*, 640 F.3d 716, 728 (6th Cir. 2011) (quoting *Howard v. Grinage*, 82 F.3d 1343, 1349 (6th Cir. 1996)). "Conduct shocks the conscience if it 'violates the decencies of civilized conduct.'" *Range v. Douglas*, 763 F.3d 573, 589 (6th Cir. 2014) (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846–47 (1998)).

With respect to an allegedly falsified misconduct report, the Sixth Circuit has held that framing an inmate by planting evidence may violate substantive due process where a defendant's conduct shocks the conscience and constitutes an "egregious abuse of governmental power." *Cale v. Johnson*, 861 F.2d 943, 950 (6th Cir. 1988), *overruled in other part by Thaddeus-X v. Blatter*, 175 F.3d 378 (6th Cir. 1999). Moreover, in the context of evaluating a claim of qualified immunity, the Sixth Circuit has noted that "the distinction between attempting to frame an inmate for a misconduct charge by planting evidence on his person and attempting to frame an inmate by giving false testimony is one without a difference." *See Scott v. Churchill*, 377 F.3d 565, 571 (6th Cir. 2004). The Court considers whether Plaintiff has set forth a plausible Fourteenth Amendment substantive due process claim against each of the three implicated Defendants below.

### a.    Defendant Tenhove

With respect to Defendant Tenhove, Plaintiff alleges that Defendant Tenhove admitted that he neither strip-searched nor found a weapon on Plaintiff's person on the date in question. (Compl., ECF No. 1, PageID.3.) Plaintiff, however, acknowledges that he was strip-searched by non-party Officer Ferguson on the date in question. (*Id.*) Furthermore, nowhere in Plaintiff's complaint does he deny that a weapon was found during that strip search. Indeed, Plaintiff apparently did not appeal the outcome of his misconduct proceedings. Instead, Plaintiff grieved only the false part of Defendant Tenhove's statement—that Defendant Tenhove was the one who strip searched Plaintiff and found a weapon. Plaintiff expressly states that he was not grieving the outcome of the misconduct. (*Id.*)

Notably, Plaintiff has not attached a copy of the Class I misconduct to his complaint. In any event, even if the misconduct report falsely stated that Defendant Tenhove was the officer who strip-searched Plaintiff and found a weapon, the statement regarding the identity of the officer who strip-searched Plaintiff does not relate to Plaintiff's guilt, particularly given that Plaintiff offers no facts from which the Court could reasonably infer that a weapon was not found when he was searched by Officer Ferguson. Quite simply, Plaintiff relies on semantics and ambiguous statements to attempt to assert a Fourteenth Amendment substantive due process claim against Defendant Tenhove. Ambiguity, however, does not support a claim for relief. In light of the fact that Plaintiff provides no basis for the Court to infer that Plaintiff was not found in possession of a weapon when searched, the Court cannot agree with Plaintiff that any alleged falsity in the misconduct report regarding the identity of the individual who strip-searched Plaintiff constitutes an "egregious abuse of governmental power." *Cale*, 861 F.2d at 950.

For the foregoing reasons, Plaintiff's Fourteenth Amendment substantive due process claim against Defendant Tenhove will be dismissed.

### b.    Defendant Goulet

With respect to Defendant Goulet, Plaintiff alleges that even though he repeatedly told Defendant Goulet during the review process for the misconduct that Defendant Tenhove had not strip-searched him, Defendant Goulet told Plaintiff that he would not be reviewing the camera footage and stated, "You're not going anywhere. If he says you had a weapon then you had a weapon because I'm not going against my staff." (*Id.*, PageID.4.) Plaintiff faults Defendant Goulet for not "uphold[ing] his responsibilities and duties" by failing to investigate the legitimacy of the misconduct. (*Id.*)

The Court cannot conclude from the facts alleged by Plaintiff that Defendant Goulet's actions rose to the level of conscience-shocking. While Plaintiff alleges that he told Defendant Goulet that Defendant Tenhove had not strip-searched him and, therefore, could not have found a weapon, Plaintiff was essentially asking Defendant Goulet to take his word over Defendant Tenhove's during the misconduct review. Nowhere does Plaintiff set forth any facts that Defendant Goulet was aware at the time of the misconduct review that Defendant Tenhove had falsified the misconduct and chose to disregard that fact.

Moreover, to the extent that Plaintiff seeks to hold Defendant Goulet liable because of his supervisory position, government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell*, 436 U.S. at 691; *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor

17

denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999).

The Sixth Circuit has repeatedly summarized the minimum required to constitute active conduct by a supervisory official:

> "[A] supervisory official's failure to supervise, control or train the offending individual is not actionable *unless* the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it." *Shehee*, 199 F.3d at 300 (emphasis added) (internal quotation marks omitted). We have interpreted this standard to mean that "at a minimum," the plaintiff must show that the defendant "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers."

*Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016) (quoting *Shehee*, 199 F.3d at 300); *see also Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995); *Walton v. City of Southfield*, 995 F.2d 1331, 1340 (6th Cir. 1993). As set forth *supra*, Plaintiff fails to allege any facts showing that Defendant Goulet encouraged or condoned Defendant Tenhove's conduct, or authorized, approved, or knowingly acquiesced in that conduct.

Accordingly, for the foregoing reasons, the Court will dismiss Plaintiff's Fourteenth Amendment substantive due process claim against Defendant Goulet.

### c.    Defendant Unknown Party

Moreover, Plaintiff contends that even though Defendant Unknown Party watched the camera footage and admitted that Defendant Tenhove was not present for the strip search conducted by Officer Ferguson, Defendant Unknown Party still found Plaintiff guilty of the misconduct anyway.

The Sixth Circuit, however, has recognized that a Michigan hearings officer, such as Defendant Unknown Party, has adjudicatory functioned set forth by statute in the nature of an administrative law judge, and has held that hearings officers are entitled to absolute judicial immunity from damages in relation to actions within the officer's authority. *See Shelly v. Johnson*,

849 F.2d 228, 230 (6th Cir. 1988) (holding that Michigan hearings officers, whose duties are set forth at Mich. Comp. Laws § 791.251 through § 791.255, are entitled to absolute judicial immunity from inmates' § 1983 suits for actions taken in their capacities as hearing officers); *see also Barber v. Overton*, 496 F.3d 449, 452 (6th Cir. 2007); *Dixon v. Clem*, 492 F.3d 665, 674 (6th Cir. 2007); *cf. Pierson v. Ray*, 386 U.S. 547, 554-55 (1967) (judicial immunity applies to actions under § 1983 to recover for alleged deprivation of civil rights).

Likewise, Plaintiff cannot seek injunctive relief against Defendant Unknown Party under § 1983 because, under the 1996 amendments to that statute, injunctive relief "shall not be granted" in an action against "a judicial officer for an act or omission taken in such officer's judicial capacity . . . unless a declaratory decree was violated or declaratory relief was unavailable." 42 U.S.C. § 1983; *accord Savoie v. Martin*, 673 F.3d 488, 496 (6th Cir. 2012). Plaintiff does not allege that a declaratory decree was violated or that declaratory relief was unavailable. Accordingly, any claim for injunctive relief against Defendant Unknown Party is barred. *See Montero v. Travis*, 171 F.3d 757, 761 (2d Cir. 1999).

In sum, while Plaintiff's Fourteenth Amendment substantive due process claims against Defendants Goulet and Unknown Party will be dismissed, the Court will allow Plaintiff to proceed on his Fourteenth Amendment substantive due process claim against Defendant Tenhove.

## Conclusion

Having conducted the review required by the PLRA, the Court determines that Plaintiff's complaint will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). Although the Court concludes that Plaintiff's claims are properly dismissed, the Court does

not conclude that any issue Plaintiff might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court does not certify that an appeal would not be taken in good faith. Should Plaintiff appeal this decision, the Court will assess the $605.00 appellate filing fee pursuant to § 1915(b)(1). *See McGore*, 114 F.3d at 610–11.

A judgment consistent with this opinion will be entered.

Dated:    September 4, 2025                    /s/ *Maarten Vermaat*
                                              Maarten Vermaat
                                              United States Magistrate Judge